■ PAPA GINO'S OF AMERICA, INC., Appellant, v PLAZA AT LATHAM ASSOCIATES, Respondent.—Casey, J. P. Appeals (1) from an order of the Supreme Court (Conway, J.), entered March 26, 1990 in Albany County, which, *inter alia,* granted defendant's motion for summary judgment on the issue of damages, and (2) from the judgment entered thereon.

At issue on this appeal is the amount of damages to which plaintiff, the operator of a pizza parlor in defendant's shopping mall, is entitled as a result of defendant's breach of a provision in the parties' lease agreement whereby defendant agreed not to lease to any other store whose main business is the sale of pizza. On a prior appeal, this court concluded that defendant was in violation of the provision by leasing premises to another pizza business and that the provision contained a liquidated damages clause (135 AD2d 74, 76). This clause provides that "[i]f Landlord leases to a store in violation of this paragraph Tenant shall pay Percentage Rent only plus common area maintenance and real estate tax charges and Merchants Association dues". The meaning of the term "Percentage Rent" is the only matter in dispute.

Article IV of the lease provides that plaintiff's rent shall consist of the following two components: "(a) Equal monthly installments of ½2th of the Annual Fixed Rent * * * [and] (b)

Percentage Rent for each Lease Year equal to the amount by which the Tenant's Gross Sales during such Lease Year multiplied by the Percentage Rent Rate exceeds the Annual Fixed Rent payable for such Lease Year". Article I of the lease sets the "Annual Fixed Rent" at $27,000 and defines "Percentage Rent Rate" as 6% on sales in excess of $475,000. Subsequent agreement by the parties reduced these dollar figures to $25,740 and $429,000, respectively.

During the period that defendant was in violation of the relevant lease provision, plaintiff paid only the "Annual Fixed Rent" in monthly installments of $2,145 ($25,740 $\times$ ¹⁄₁₂ = $2,145); plaintiff's annual gross sales during this period did not exceed the $429,000 threshold referred to in the definition of "Percentage Rent Rate". Plaintiff contends that "Percentage Rent" should be calculated by subtracting the "Annual Fixed Rent" of $25,740 from 6% of the gross annual sales. Since 6% of the gross annual sales did not exceed $25,740 during the period at issue, plaintiff's calculation would result in a "Percentage Rent" of $0 for the period, and plaintiff's damages under this calculation would be the entire amount of the "Annual Fixed Rent" paid by plaintiff during the period. Defendant, on the other hand, contends that "Percentage Rent" should be calculated by subtracting the "Annual Fixed Rent" *payable* during the period at issue from 6% of the gross annual sales. Since no "Annual Fixed Rent" was payable during the period that defendant was in violation of the lease, defendant contends that the "Percentage Rent" was 6% of gross annual sales, and plaintiff's damages would be the difference between the "Annual Fixed Rent" paid by plaintiff and 6% of gross annual sales. Supreme Court adopted defendant's interpretation. We agree.

The relevant provisions are inartfully drawn at best. Since "Percentage Rent Rate" is defined as 6% on gross annual sales in excess of $429,000, a literal reading of the "Percentage Rent" component would yield no "Percentage Rent" until gross annual sales exceeded $858,000 (gross annual sales multiplied by "Percentage Rent Rate" = 6% $\times$ [$858,000 − $429,000] = 6% $\times$ $429,000 = $25,740; "Percentage Rent" = [gross annual sales multiplied by "Percentage Rent Rate"] − "Annual Fixed Rent" = $25,740 − $25,740 = $0). The parties apparently agree, however, that there should be a "Percentage Rent" component whenever 6% of gross annual sales exceeds "Annual Fixed Rent". In essence, the parties have construed the agreement so that "Percentage Rent Rate" means 6% and not 6% on gross annual sales in excess of $429,000. Accord-

ingly, we reject plaintiff's claim that the relevant terms are clear and unambiguous.

"It is the rare writing that requires no interpretation" *(Bensons Plaza v Great Atl. & Pac. Tea Co.,* 44 NY2d 791, 792-793 [citations omitted]). When, as here, the ambiguity is to be resolved on the basis of the agreement alone, without reference to extrinsic evidence, the issue is to be determined by the courts as a matter of law *(see, Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172). "Generally, the aim is a practical interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable expectations' " *(Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397, 400, quoting 1 Corbin, Contracts § 1). The court cannot, under the guise of construction, rewrite the parties' contract *(see, Fiore v Fiore,* 46 NY2d 971, 973); however, "not merely literal language, but whatever may be reasonably implied therefrom must be taken into account" *(Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 555).

The interpretation advanced by each party finds support in the language contained in the provision concerning the "Percentage Rent" component, but we conclude that defendant's interpretation is consistent with the reasonable expectations of the parties as gleaned from the rent provisions of the lease agreement read as a whole. It is clear that the parties intended the rent to be tied directly to plaintiff's gross sales. In addition to the express connection in the "Percentage Rent" component, it is apparent that the "Annual Fixed Rent" component was derived by reference to a minimum gross sales figure projected by the parties (6% of $429,000 = $25,740). Defendant's interpretation effectively deletes this minimum in the event of a breach and allows the rent to vary with gross sales regardless of how low gross sales fall, thereby accurately reflecting the actual harm caused by defendant's wrongful conduct in leasing to a business which competes with plaintiff. Plaintiff's interpretation, on the other hand, results in a windfall, allowing plaintiff to remain rent free until its gross sales exceed $429,000 and even then rent would be nominal.

Based upon our review of the lease agreement in light of the general principles of contract construction, we conclude that defendant's interpretation, which construes the term "Percentage Rent" as 6% of gross sales with no minimum, is the practical interpretation which realizes the parties' reasonable expectation. Supreme Court's order and judgment should, therefore, be affirmed.

Order and judgment affirmed, with costs. Casey, J. P., Mi-

koll, Yesawich, Jr., and Harvey, JJ., concur; Levine, J., not taking part.