■ STATE BANK OF CHITTENANGO et al., Appellants, v CENTRAL NATIONAL BANK, CANAJOHARIE, Respondent. [609 NYS2d 381] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Tait, Jr., J.), entered March 1, 1993 in Madison County, which, inter alia, granted defendant's cross motion for summary judgment dismissing the complaint.

Plaintiff State Bank of Chittenango (hereinafter State Bank) is a wholly owned subsidiary of plaintiff SBC Financial Corporation, a bank holding company. In March 1989, plaintiffs and defendant entered into an agreement, by the terms of which State Bank would merge into SBC Financial Corporation, which would in turn merge into defendant. Pertinent to this appeal is one clause of the contract which conditions defendant's obligation to consummate the merger agreement on the following proviso: "(k) [defendant] shall have independently investigated the alleged pollution on the property formerly owned by the Tuscarora Chemical Works, Inc. and shall have reasonably determined additional remedial and legal expenses shall not exceed $100,000. Said investigation shall be completed within 120 days, at [defendant's] sole cost and expense." The property referred to in this provision (hereinafter the Tuscarora site) was owned by State Bank at the time the merger agreement was executed and had been listed by the

Department of Environmental Conservation (hereinafter DEC) as a potentially hazardous site. The 120-day period for completing the investigation was later extended for an additional two months when it became apparent that defendant would not be able to comply with the original time limit.

Implementing the above condition, defendant retained an independent engineering firm to study the site and report on the probable cost of cleaning it up. The firm found no toxic waste on the property but did find elevated salt levels in the groundwater, and inasmuch as DEC had not yet indicated what level of remediation would be required, the report included cost estimates for both "best case" and "worst case" scenarios. The "best case" estimate, which was the predicted expense if DEC decided to remove the site from the list of possibly contaminated properties but required groundwater remediation as a condition thereof, was $233,654. The "worst case" figure, $537,274, reflected the estimated cost of a full-scale cleanup of the soil as well as the groundwater.

When apprised of these figures, defendant informed plaintiffs that it was not prepared to proceed with the merger. Nevertheless, defendant made it known that it was still interested in merging if the uncertainties surrounding the cost of remediating the Tuscarora site could be resolved to its satisfaction, and agreed to negotiate to this end. During these negotiations, the expiration date of the original agreement, which remained in force, was extended several times until it was eventually set to expire on February 28, 1991.

In December 1990, while the merger agreement was still in force, DEC removed the Tuscarora site from the list of potentially hazardous sites; although it apparently referred the matter to its water division, DEC did not require groundwater remediation as a condition of the "delisting". In February 1991, having been unable to agree on satisfactory terms for the proposed merger, defendant notified plaintiffs that it intended to allow the existing agreement to expire on February 28, 1991.

Plaintiffs thereafter brought this suit, claiming that defendant's failure to proceed with the merger, or to at least attempt to ascertain what the actual remediation cost would be, given the delisting of the site, constituted a violation of the contract's requirement that both parties "do any and all things reasonably deemed by them, or any of them, to be necessary or appropriate in order to cause this Agreement to be consummated", and seeking damages for this asserted breach of contract. The parties cross-moved for summary

judgment and Supreme Court granted partial summary judgment to defendant, reasoning that State Bank lacked standing to seek damages based on the loss in value of its shares resulting from the failure of the merger. Plaintiffs thereafter sought leave to amend the complaint to join a representative shareholder as party plaintiff and to add a cause of action on behalf of the shareholders for these damages. Defendant and plaintiffs again cross-moved for summary judgment on the issue of liability and Supreme Court granted defendant's motion, dismissing the complaint in its entirety. Plaintiffs appeal.

At issue is the interpretation to be given to the Tuscarora site condition. Although not explicitly stating a time limitation within which it was required to be satisfied, the language of this condition, when taken as a whole and accorded its " 'fair and reasonable meaning' " *(Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 555; *see, Papa Gino's v Plaza at Latham Assocs.,* 170 AD2d 869, 871), plainly implies that the costs are to be determined as a result of, or in conjunction with, the investigation, which is to be completed in a specific time period. If this were not so but instead, as plaintiff urges, defendant was to bear a continuing responsibility to investigate the costs—and if, at any time between the initial investigation and the termination of the contract, those costs fell below $100,000, to close—the time limitation for completion of the investigation would be utterly meaningless. That defendant's interpretation comports with the parties' intentions is underscored by plaintiffs' admission that defendant could have terminated the contract in September 1989, after the results of the investigation revealed that the likely cost of cleanup exceeded the threshhold provided in the condition. Given that plaintiffs concede that in September 1989 defendant had the right to terminate the contract because the Tuscarora condition had become "impossible to fulfill", it ill-behooves them to now assert that that condition has, in fact, been fulfilled.

Plaintiffs also contend that the contract extensions would have had no purpose if defendant in fact had no obligation to close after September 1989, and therefore that those extensions must have been intended to impose a continuing obligation to close at any time the cleanup costs could be reasonably determined to be less than $100,000. This contention is untenable, for it is clear that the extensions benefited both parties in that they effectively maintained the status quo, making it easier for them to negotiate in anticipation of eventual settlement of the Tuscarora site remediation problem on terms

acceptable to both. Furthermore, pursuant to terms recited elsewhere in the merger agreement, defendant could have elected to waive the Tuscarora condition at any time.

Finally, on this point, although plaintiffs proffer the deposition testimony of defendant's president, as well as that of State Bank officials, in an attempt to prove that both parties understood that these extensions were for the purpose of allowing defendant more time to investigate in the hope that the actual cost of cleanup at the site would be found to be below the $100,000 threshhold, there is nothing in the record to indicate that either party intended that such a result would, without more, revive defendant's obligation to close. Not unimportant in this regard is the fact that the period for completion of the investigation called for by the condition previously set out was not modified beyond the initial two-month extension.

Equally tenuous is plaintiffs' claim that the contract amendment proposed by defendant, aimed at resolving the problems raised in connection with the the Tuscarora site, which significantly was rejected by State Bank's board and never executed, nevertheless bound defendant; nor can plaintiffs be said to have reasonably relied on representations, assertedly made by defendant, that it would complete the merger according to its original terms if the site was delisted. Inasmuch as State Bank failed to approve the aforementioned amendment specifically because it would have conditioned defendant's obligation to close on the delisting of the site, the incongruity of State Bank's argument that it reasonably relied on defendant's representations is readily apparent. Moreover, the record shows that defendant represented only that it was interested in pursuing negotiations and was sanguine that acceptable terms would be arrived at, not that it would definitely accept any particular terms.

Lastly, plaintiffs have not substantiated their claims of "bad faith". Once the condition failed, defendant had the right to allow the contract to expire without closing on the transaction; that there may have been reasons, unrelated to the Tuscarora site, which motivated defendant to do so is irrelevant (see, Quail Ridge Assocs. v Chemical Bank, 185 AD2d 522, 524).

Mikoll, J. P., Mercure and Crew III, JJ., concur. Ordered that the order is affirmed, with costs.