■ QUAIL RIDGE ASSOCIATES, Respondent, v CHEMICAL BANK, Appellant.—Crew III, J. Appeals (transferred to this court by order of the Appellate Division, Second Department) (1) from an order of the Supreme Court (Dickinson, J.), entered June 25, 1991 in Putnam County, which denied defendant's motion for summary judgment dismissing the complaint and on its counterclaims, and (2) from an order of said court, entered September 6, 1991 in Putnam County, which, *inter alia,* upon reconsideration, adhered to its prior decision.

On September 18, 1987 plaintiff and defendant entered into an agreement whereby defendant agreed to loan plaintiff $22.3 million to finance plaintiff's acquisition and development of real property for a condominium complex located in the Town of Kent, Putnam County. In furtherance of the loan, the parties executed a building loan agreement (hereinafter BLA) which prescribed the terms under which money would be advanced to plaintiff. Central to the determination of this appeal is paragraph 10 of the BLA, which provides that defendant is not obligated to make any advance on the loan if, in its sole opinion, the balance of the loan yet to be advanced is, at any time, less than the actual sum which would be required to complete construction. The difference between the amount yet to be advanced and the actual amount needed to complete the project is defined as the "deficiency", which was to be determined by estimation of the lender and the inspecting engineer. In the event of a deficiency, plaintiff was afforded 10 days to cure the same and if it did not do so, defendant was entitled to declare plaintiff in default of the contract.

Pursuant to the BLA, Merit & Harris, Inc. was designated by the parties as the inspecting engineer. Thereafter, between September 1987 and May 1988, defendant advanced more than $3.6 million to plaintiff pursuant to the BLA. By letter dated July 19, 1988 plaintiff was advised that it had 10 days to cure a deficiency or defendant would consider it to be in default. Plaintiff objected to the deficiency determination and the parties thereafter debated the existence and the amount of the deficiency through the fall of 1988. After certain contract revisions and further analysis, Merit & Harris, Inc. issued a revised report in which it estimated that there would be a deficiency of more than $2.3 million. On December 14, 1988 defendant notified plaintiff that if the deficiency was not cured by December 31, 1988, defendant would accelerate the loan. On January 10, 1989 defendant declared plaintiff to be in default, accelerated payment of the loan and demanded payment of the outstanding principal plus interest.

Plaintiff commenced this action against defendant for breach of contract.* Defendant interposed an answer and asserted affirmative defenses and counterclaims for breach of contract. Plaintiff answered the counterclaims and asserted six affirmative defenses. Following discovery, defendant moved for summary judgment on its counterclaims and for dismissal of the complaint. Supreme Court denied the motion finding that there were factual issues concerning whether defendant acted in good faith in declaring a deficiency. Defendant then moved to renew or reargue and Supreme Court adhered to its prior decision. Defendant appeals from both orders.

To prevail on its motion, defendant must make out a prima facie case demonstrating entitlement to judgment as a matter of law on its counterclaim (see, Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067). The uncontradicted evidence demonstrates that defendant began a review process of the project and as early as May 1988 was of the opinion that a deficiency existed. In July 1988, after receipt of a report of the inspecting engineer, defendant declared such a deficiency. Upon receipt of a revised report of the inspecting engineer, defendant ultimately declared a deficiency based upon that report of $2.3 million and demanded that plaintiff cure said deficiency. In view of the fact that paragraph 10 provides that defendant would not be obligated to make further advances on

---

* The complaint originally had 10 causes of action but nine of them have previously been dismissed (see, 162 AD2d 917, lv dismissed 76 NY2d 936).

the loan if, in its *sole* opinion, a deficiency existed and had the right to declare plaintiff in default if it did not cure the deficiency, we find that defendant has made a prima facie showing of its entitlement to judgment on the counterclaims *(see, Blue Ridge Bus. Brokers v Ros-Mar Club,* 121 AD2d 492).

Plaintiff contends, as Supreme Court found, that there is a question of fact as to whether defendant acted in bad faith in declaring the deficiency. There is no doubt that there is implicit in all contracts an implied covenant of fair dealing and good faith *(see, Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.,* 30 NY2d 34, 45, *cert denied* 409 US 875; *see also, Components Direct v European Am. Bank & Trust Co.,* 175 AD2d 227, 229). The gravamen of plaintiff's contention that defendant acted in bad faith is twofold. First, plaintiff contends that defendant, in declaring the deficiency, was motivated by the change in market conditions since the inception of the loan. According to plaintiff, at the time of the declaration of the deficiency, defendant perceived that it was no longer possessed of a "favorable" loan which is the reason it declared a deficiency. Second, plaintiff contends that the methodology utilized by the inspecting engineer in arriving at its estimated cost of construction was not reasonable in that the engineer and defendant failed to use trade contracts to establish the "actual" cost of construction. Accordingly, plaintiff argues there are questions of fact precluding a grant of summary judgment. We disagree.

A review of the record makes clear, as urged by plaintiff, that defendant had concluded that the real estate market had softened dramatically since inception of the loan and that it would not have made the loan had it been presented to it at the time it declared the deficiency. However, we do not view its motivation in declaring the deficiency as relevant *(see, Betts v University of Rochester,* 123 AD2d 496). On the other hand, evidence that defendant acted in bad faith in determining a deficiency, as opposed to insisting that such a deficiency be cured, would be highly relevant, but we find no such evidence in this record. Supreme Court found, and we agree, that there is no showing of bad faith, collusion or fraud on the part of the inspecting engineer in arriving at its determination of a deficiency.

Plaintiff's contention that defendant's reliance on that estimate was unreasonable because it failed to use trade contracts to establish actual costs belies the purpose and intent of paragraph 10 of the BLA. At the time the inspecting engineer made its determination plaintiff had not entered into con-

tracts with its subcontractors. Indeed, at the time the loan agreement was entered into the plans and specifications for the project were incomplete. Therefore, any analysis of the project costs until such time as the plans were complete and subcontracts were actually entered into would, of necessity, require estimates. To interpret paragraph 10 to require the use of plaintiff's subcontracts as the only reasonable means of determining the costs of the project is specious. While, arguably, the use of such contracts would provide the most reliable basis for a determination of the costs of the project, it would also require the parties to defer any analysis of the costs until all such contracts were in place and would render nugatory the explicit language of paragraph 10 which provides that the "Lender shall not be obligated to make any advance of the Loan to Borrower if * * * the balance of the Loan yet to be advanced by Lender is at any time *less* * * * than the actual sum, *as estimated* by Lender and the Inspecting Engineer". Thus, the very language of the BLA contemplates an estimate of the construction costs in determining whether a deficiency exists. Because plaintiff has proffered no evidence of fraud by defendant or the inspecting engineer in arriving at the estimated costs, we find that defendant had the contractual right to accelerate the loan.

Mikoll, J. P., Yesawich Jr., Mercure and Harvey, JJ., concur. Ordered that the orders are reversed, on the law, with costs, defendant's motion for summary judgment granted, summary judgment awarded to defendant on its counterclaims and complaint dismissed.