HAVEPOWER, LLC,

v.

GENERAL ELECTRIC CO., et al.

No. CIV.A. DKC 2001–0353.

United States District Court,
D. Maryland.

March 31, 2003.

Leslie K. Dellon, David A. Holzworth, Lepon, Holzworth and Kato PLLC, Washington, DC, for plaintiff.

Maury S. Epner, Joseph P. Suntum, James L. Thompson, Miller, Miller and Canby, Rockville, MD, for defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this breach of contract case are: (1) the motion of Plaintiff havePower, LLC for summary judgment; (2) the motion of Defendant General Electric Fuel Cell Systems, LLC (GEFCS) for summary judgment; and (3) Plaintiff's motion to file a sur-reply. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the following reasons, the court will grant Plaintiff's Motion for Leave to File Surreply and grant Defendant's motion for summary judgment on the breach of contract and promissory estoppel claims. The court will deny Plaintiff's motion for summary judgment on the breach of contract and promissory estoppel claims. Both parties' motions for summary judgment on the claim for specific performance will be denied as moot.

## I. Background

The following facts are set forth as uncontroverted.[1] This case arises out of a dispute over an exclusive distributorship agreement between havePower and GE Fuel Cell Systems, LLC, (GEFCS) to sell fuel cells in the Washington, DC, Maryland and Northern Virginia region. Fuel cell electric generators produce direct electric current that can be converted to alternating current for use by homes and industries. havePower was established as a division of Chesapeake Design, LLC, a Maryland company, in 1998. It became a District of Columbia limited liability company in December 1999 and was reformed as a Maryland limited liability company in August 2000. In February 1999, GE Power Systems formed GE Fuel Cell Systems to market and distribute fuel cells designed and manufactured by Plug Power, Inc. GE Fuel Cell Systems is co-owned by GE and Plug Power, Inc.

In late 1999, havePower contacted GEFCS to explore the possibility of becoming a regional distributor of Plug Power fuel cells. After an initial period of correspondence, on or about February 15, 2000, havePower representatives traveled to GEFCS's offices in Latham, New York where they toured the facility and presented havePower's Strategic Plan to GEFCS in a meeting. The Plan detailed: (1) havePower's company profile; (2) havePower's business experience and revenue performance; (3) the fuel cell products and services to be offered by havePower; (4) the current state of fuel cell technology; (5) havePower's management team; (6) havePower's strategic alliance with PowerTrust; (7) havePower's capital structure; (8) havePower's secured gas and propane supply; and (9) havePower's market presence.

Over the course of the next few months, havePower and GEFCS engaged in extensive negotiations over the terms of a limited exclusive distributorship of certain Plug Power fuel cells. Jay Zawatsky (Zawatsky), Chief Executive Officer of havePower, and Richard Robertson (Robertson), Director of North American Market Development for GE MicroGen, Inc., were the

---

1. Disputed facts will be set forth in the sections below and viewed in the light most favorable to the non-moving party.

primary negotiators on behalf of havePower and GEFCS respectively.

From March through July 2000, Robertson and Zawatsky exchanged communications and preliminary documents in an attempt to work toward a definitive Distributor Agreement between havePower and GEFCS. At all times material to the formation of the Distributor Agreement contract, GEFCS's President, Barry Glickman (Glickman), delegated to Robertson: (1) authority to negotiate the terms of a definitive Distributor Agreement, within certain parameters; (2) actual authority to communicate to havePower GEFCS's decision concerning contract terms and approval, subject to approval first by Glickman and then by the GEFCS distributor review and approval process; and (3) actual authority to negotiate the terms of a definitive Distributor Agreement on behalf of GEFCS within the terms of its standard contract, although anything outside of those standard terms also needed to be approved by Glickman and any distribution agreement, before it could take effect, was subject to GEFCS's approval process.

Beginning in May 2000, havePower and GEFCS engaged in talks contemplating the sale of fuel cells by havePower, as a GEFCS distributor, to American Indian tribes in addition to the Maryland, Washington, DC, and Northern Virginia markets. By letter dated May 4, 2000, Zawatsky communicated to GEFCS that havePower was ready to execute the definitive Distributor Agreement and asked for wiring instructions to enable havePower to transmit $750,000 to GEFCS as the fee for the exclusive distributorship that would be created by the definitive Distributor Agreement.

Over the course of July 2000, havePower and GEFCS continued negotiations over specific terms of a definitive Distributor Agreement. By letter dated July 24, 2000, Robertson sent Zawatsky two copies of the definitive Distributor Agreement for execution by havePower explaining that Robertson would submit the copies for Glickman's signature later that week. By letter dated July 25, 2000, havePower returned the copies of the Distributor Agreement, executed by havePower, to Robertson along with a ·check in the amount of $750,000.

In a telephone conversation on August 17, 2000, Robertson notified Zawatsky that GEFCS's marketing department was assembling a print advertisement and had requested that the trademarks for all fuel cell distributors be included in the ad copy, which was due to the printers soon. Robertson asked Zawatsky to transmit to him an electronic version of havePower's logo for inclusion in the print advertisement that was set to run in the Fall 2000 issues of several trade publications. While the parties dispute other portions of the conversation between Zawatsky and Robertson, it is undisputed that the next day, Zawatsky sent two files containing havePower's final logo design via e-mail to Robertson. havePower then retained intellectual property lawyers to initiate a trademark/servicemark application process, paid for a comprehensive trademark search, and intensified its marketing efforts. Beginning at the end of August 2000 and continuing through September 2000, Zawatsky and Robertson's communications addressed proposed installation projects, GEFCS's advertisement and marketing efforts (a topic GEFCS also addressed with other distributors), and discussions with the leader of the Washoe Tribe of Nevada and California and other Native American tribal leaders.

On October 23, 2000, Robertson telephoned Zawatsky. The conversation called into question the viability of the

terms of the parties' current distributorship agreement. On October 25, 2000, Zawatsky, George Milne, and Bill Ingersoll, representing havePower, participated in a telephone conference with Robertson and Glickman which havePower recorded without the knowledge of the GEFCS participants. In that teleconference, neither Glickman nor Robertson confirmed or denied a contractual relationship with have-Power. Robertson did explain that the just-announced merger between GE and Honeywell had an effect on GEFCS's unwillingness to enter into exclusive distributorships. Glickman invited the havePower executives to visit GEFCS in Latham, New York to continue their discussions in person.

On November 6, 2000, Zawatsky, Milne, and Ingersoll traveled to GEFCS's offices to meet with Robertson and Glickman. Because Glickman was unable to participate in the meeting, the havePower executives met only with Robertson. Robertson reminded them that havePower had not yet secured GE distributor approval and explained that GEFCS had decided not to enter into any more exclusive fuel cell distributorships. The parties then discussed available options. In the following weeks, havePower sent GEFCS a copy of the tape-recorded teleconference on October 25, 2000. At the end of November 2000, Glickman, Robertson, and Gwen Cole, an administrator in GEFCS's compliance department, contacted the disclosed references havePower had submitted earlier to conduct reference checks.

havePower filed the present action against GE and GEFCS alleging breach of contract, inducement of breach of contract, promissory estoppel and antitrust violations in the Circuit Court for Montgomery County on December 29, 2000. Defendants removed the case to this court on February 7, 2001 on the basis of diversity jurisdiction and moved for dismissal on March 9, 2001. This court decided, in an order issued on January 24, 2002, to dismiss havePower's claims of breach of implied contract and violation of Maryland antitrust laws, but denied Defendants' motion with respect to havePower's claims of breach of a written contract, promissory estoppel, and specific performance against GEFCS.

havePower moved for summary judgment on August 5, 2002 and GEFCS cross-moved for summary judgment on August 26, 2002. Plaintiff moved for leave to file surreply in support of its motion for summary judgment on October 9, 2002.

## II. Plaintiff's Motion for Leave to File Surreply

Plaintiff seeks leave to file a surreply to bring to the court's attention what Plaintiff deems are seven major misstatements and distortions of the record evidence contained in Defendant's reply. Despite Defendant's objection, the court will grant permission to file the surreply.

## III. Cross–Motions for Summary Judgment

### A. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505;

*see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold,* Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable; or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

In cases where a court is confronted with cross-motions for summary judgment, the court must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *See Kohl v. Association of Trial Lawyers of America, et al.,* 183 F.R.D. 475, 478 (D.Md.1998) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2720 (1983)). Therefore, in determining whether genuine and material factual disputes exist, the court considers the parties' respective memoranda and the exhibits attached thereto and construes all facts and reasonable inferences drawn therefrom in the light most favorable to the respective non-movant. *See id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

**B. Analysis**

*1. Breach of Contract*

■ It is undisputed that havePower and GEFCS negotiated the terms of an exclusive fuel cell Distributor Agreement

and that the final execution copies of the contract had been produced; sent to havePower, executed by havePower, and sent back to GEFCS for execution by GEFCS, along with a check for $750,000 as havePower's distributorship fee. It is undisputed that GEFCS never signed the agreement and never negotiated the check for $750,000. Also undisputed is the fact that GEFCS notified havePower in the fall of 2000 that GEFCS would not be entering the exclusive distributorship relationship with havePower that the Distributor Agreement contemplated. The dispute over havePower's breach of contract claim against GEFCS is whether, despite the undisputed facts just cited, a binding contract was nonetheless formed between havePower and GEFCS, which GEFCS breached when it decided not to partner with havePower. The parties have previously agreed that New York law applies to this claim.

Plaintiff's motion for summary judgment states: "The central factual and legal issue before the Court ... concerns the formation of a contract, on August 17, 2000, between GEFCS and havePower." Paper 25, at 27. It argues that Defendant's words on August 17 manifested acceptance of the July 25 Distributor Agreement and that New York law to the effect that, "if parties do not intend to be bound by an agreement until it is in writing and signed, there is no contract until that event occurs,", is not a hard and fast rule. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74–75 (2d Cir.1984). Plaintiff's breach of contract claim depends on acceptance of its version of the August 17th telephone conversation. Those facts are, however, very much in dispute and Plaintiff cannot succeed on its own motion for summary judgment as to that claim.

In its opposition and cross motion for summary judgment, Defendant argues that, even accepting Plaintiff's version of the August 17th telephone conversation, because havePower never met the contingency required for the Distributor Agreement to take effect, GEFCS did not commit a breach of contract. Defendant notes that paragraph 22.4 of the Distributor Agreement states:

> This Agreement is contingent upon [havePower's] satisfactory completion, in GEFCS's sole opinion, of GEFCS's distributor review and approval process. In the event that [havePower] is not able to satisfy all applicable requirements, this Agreement will terminate and the Parties hereto shall have no further obligations to each other.

Paper 25, Ex. 4, at 17. Furthermore, the preceding paragraph 22.3 states:

> Any changes to this Agreement must be agreed to by the Parties. No change, modification, extension, renewal, ratification, rescission, termination, notice of termination, discharge, abandonment or waiver of this Agreement or any of the provisions hereof nor any representation, promise or condition relating to this Agreement shall be binding upon either Party unless set forth in a writing signed by both Parties.

*Id.* Defendant argues that because Plaintiff never satisfactorily completed GEFCS's distributor review and approval process as required by paragraph 22.4, and because the parties never modified that requirement in writing as paragraph 22.3 requires, the Distributor Agreement terminated and GEFCS is not bound by it.

Plaintiff disputes that it never achieved GEFCS approval. havePower cites to the following as evidence that GEFCS had effectively approved havePower as a distributor: (1) the fact that Glickman preapproved the July 25, 2000 Distributor Agreement; (2) the fact that GEFCS's internal policy required approval to have

been completed *prior* to transmittal of agreement for havePower's execution on July 25, 2000; (3) Robertson's representation to Zawatsky that the "deal was done" and the approval process was a mere formality in the telephone conversation on August 17, 2000; (4) Robertson and Glickman's multiple admissions by silence that the deal had been done on August 17, 2000; (5) GEFCS's retention of the $750,000 check even after deciding to walk away from the agreement; (6) GEFCS's involvement in joint marketing efforts with havePower and the Washoe Tribe; (7) GEFCS's demand for the havePower logo for use in the map advertisement; and (8) the involvement of GE Engineer Eric Fischer with havePower in the site adaptation for the installation of fuel cells in DC complex. Nevertheless, even viewing these facts in the light most favorable to havePower, the language of paragraph 22.4 of the Distributor Agreement remains clear and unambiguous: the agreement was contingent upon havePower's "satisfactory completion, *in GEFCS's sole opinion*, of GEFCS's distributor review and approval process." (Emphasis added.) Plaintiff has not presented evidence of an unequivocal statement by GEFCS that, in its opinion, havePower ever completed the review and approval process. In fact, when Robertson sent the Distributor Agreement to Zawatsky on July 25, 2000, his request for Zawatasky's signature was accompanied by a reminder that he would "continue to keep [Zawatsky] updated as to the progress in clearing the GE approval process." Paper 25, Ex. 4, at 1. Even accepting as true the disputed fact that Robertson told Zawatsky on August 17, 2000 that approval by GE was "a mere formality," this statement still does not qualify as an acknowledgment that havePower was actually approved. In bringing its motion, GEFCS asserts its opinion that havePower never satisfactorily completed the review and approval process. By the terms of the agreement, therefore, havePower cannot be considered to have been approved. *See, e.g., Quail Ridge Assocs. v. Chemical Bank,* 185 A.D.2d 522, 523–24, 586 N.Y.S.2d 155, 157 (1992) (finding that defendant was entitled to judgment where a contract provided that defendant would not be obligated to make further advances on a loan if, in its sole opinion, a deficiency existed and had the right to declare plaintiff in default if it did not cure the deficiency).

havePower notes that GE's internal policy requires the review and approval process to be completed before an agreement may be transmitted to a contracting partner for execution and GEFCS sent the Distributor Agreement to havePower for execution on July 25, 2000. Plaintiff therefore argues that the review process must be deemed to have been completed or waived before the agreement was sent to havePower. It is undisputed, however, that the review process was never actually completed. When havePower argues that the review process should be deemed to have been completed, therefore, it is essentially re-stating its argument that the review process was waived.

GEFCS asserts that paragraph 22.3 of the Distributor Agreement explicitly provides that any waiver or modification of the agreement, which would include any waiver or changes to paragraph 22.4's requirement of successful completion of the GE approval process, shall bind the parties only if made in writing and signed by both parties. The parties have presented no evidence of such a writing. Furthermore, New York law does not support havePower's claim that a modification to the approval requirement was made orally. Under New York law, where a written contract provides that it can only be changed by a signed writing, any oral

modification is not enforceable. *Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700, 703, 189 A.D.2d 629, 631 (1993).

Plaintiff counters with several arguments. First, havePower argues that GEFCS, by not complying with its own internal policies requiring that approval be completed before the Distributor Agreement was sent to havePower, inappropriately modified the review and approval process without a writing. Plaintiff has presented no evidence, however, demonstrating that paragraph 22.3 of the Distributor Agreement applies to GE's internal review and approval processes.

havePower's second argument is that the e-mail and letter correspondence between Zawatsky and Robertson immediately following the telephone call of August 17, 2000 constitutes signed, written acknowledgment of the review process's waiver. Plaintiff does not specify which parts of Zawatsky and Robertson's correspondence after August 17, 2000 the court should consider as forming this signed, written acknowledgment of waiver. Reviewed generally, the correspondence shows that even after the August 17, 2000 telephone conversation, Robertson continued to state that GE's internal approval still needed to be obtained. *See, e.g.*, Paper 25, Exs. 15 and 19.

havePower next argues that New York law recognizes partial performance and estoppel as limited exceptions to the requirement of a written modification and that these exceptions are applicable here. In order to benefit from either of these exceptions, havePower must show that the conduct it claims to have resulted from the oral modification is inconsistent with the agreement as written. *Towers Charter & Marine Corp. v. Cadillac Insurance Co.*, 894 F.2d 516, 522 (2d Cir.1990) (citing *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926, 366

N.E.2d 1279, 1283 (1977)). havePower points to joint marketing efforts directed at the Washoe Tribe, joint engineering studies, havePower's development of a marketing logo, and havePower's reliance on Robertson's representations and assurances with respect to their partnership as examples of conduct resulting from the modification it claims was made to paragraph 22.4's requirement. This conduct, evidencing havePower's efforts and willingness to be engaged with GEFCS in marketing and development activities, however, is not unreasonable or incompatible with the continued existence of paragraph 22.4's requirement that it be subject to GE's internal review and approval process. While Plaintiff points to Zawatsky's statement that he sent Robertson havePower's logo only on Robertson's assurance that they had a deal, and may argue that other conduct was also based on that assurance, the question is not whether Plaintiff's conduct is compatible with the alleged modification, but whether the conduct is incompatible with the underlying agreement. As long as havePower *could* have been approved at a later point in time, efforts by havePower and GEFCS to prepare and plan for an exclusive distributorship cannot be considered inconsistent with the possibility that havePower might not be approved eventually.

The case that havePower cites in support of its contention that the course of business conduct between the parties can operate as an equitable modification of a contractual requirement, *LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc.*, 92 F.Supp.2d 119 (S.D.N.Y.2000), is inapposite to the present case. *LaGuardia Assocs.* addressed a contract dispute between a franchisor and franchisee. Although the contemplated relationship between GEFCS and havePower may be analogous to the franchisor-franchisee re-

lationship in certain ways, paragraph 13.2 of the Distributor explicitly states that the agreement "is not intended to be construed as a 'franchise' agreement under any present or future state or Federal laws . . . ." Paper 25, Ex. 4.

Finally, havePower observes that paragraph 23.2 of the Distributor Agreement provides that,

> [t]he Parties hereto shall use their respective reasonable efforts to secure that any necessary third party shall do, execute and perform all such further deeds, documents, assurances, acts and things as any of the Parties hereto may reasonably require by notice in writing to the others to carry the provisions of this Agreement into full force and effect.

Plaintiff argues that GEFCS made no attempt to use "reasonable efforts" to secure the six signatures for GE's internal approval. Paragraph 23.2 requires GEFCS to use reasonable efforts to secure the cooperation of third parties. The six individuals whose signatures are required for internal approval are not "third parties" to the agreement. Furthermore, the only evidence Plaintiff proffers in support of its argument is the fact that Steve Fludder, a GE executive and one of the six whose signatures were required for approval, was never informed that GEFCS was walking away from the havePower deal. Yet this fact does not put into dispute the evidence, presented by Defendant, that shows Robertson's repeated efforts to gain Fludder's approval for the havePower deal. *See* Paper 27, Ex. 19; Ex. 17, at 9 and 11; Ex. 28.

In response to Defendant's motion for summary judgment, Plaintiff has failed to establish genuine issues of material fact in support of its contention that paragraph 22.3 of the Distributor Agreement between havePower and GEFCS was modified and the approval contingency of paragraph 22.4 was waived. Defendant's actions therefore do not constitute a breach of contract. The court will grant Defendant's motion for summary judgment on have-Power's breach of contract claim.

### 2. *Promissory Estoppel*

■ The parties have not agreed whether New York or Maryland law applies to this claim. In deciding Defendant's motion to dismiss, this court noted that the elements of promissory estoppel are almost identical in the two states and essentially require a showing of the same elements. Promissory estoppel in Maryland has four elements: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise. *See Pavel Enterprises, Inc. v. A.S. Johnson Co.,* 342 Md. 143, 166, 674 A.2d 521 (1996). The elements of promissory estoppel as formulated under New York law are: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party by the promisee; and (3) an injury sustained in reliance on the promise. *See Rogers v. Town of Islip,* 230 A.D.2d 727, 646 N.Y.S.2d 158 (1996) (citing *Ripple's of Clearview, Inc. v. Le Havre Assocs.,* 88 A.D.2d 120, 122, 452 N.Y.S.2d 447 (1982), *lv. denied,* 57 N.Y.2d 609, 456 N.Y.S.2d 1026, 442 N.E.2d 1277). As in the motion to dismiss, the court observes that analysis of the motions for summary judgment on the promissory estoppel claim under Maryland and New York law yield the same result.

■ Plaintiff's motion for summary judgment on the promissory estoppel claim relies on the assertion that Glickman and

Robertson did not deny that the deal was completed on the occasions that Zawatsky confronted them with insistence that the "deal was done," and that GEFCS made representations to third parties that have-Power was a GEFCS distributor. Paper 25, at 40. Like the facts relied upon by Plaintiff in its motion for summary judgment on the breach of contract claim, these facts are also very much in dispute. Plaintiff therefore cannot succeed on its own motion for summary judgment on this claim.

In cross-moving for summary judgment, Defendant focuses on the requirement that Plaintiff suffer a detriment in order to prevail on a claim of promissory estoppel. Defendant argues that, even assuming a promise was made to Plaintiff, Plaintiff did not suffer a detriment requiring the enforcement of that alleged promise.[2] GEFCS argues that the injuries sustained by havePower either do not qualify properly as "injuries" or were not caused by havePower's reliance on GEFCS's alleged promise. havePower claims that it expended $40,000 in costs associated with producing its logo and the development of two marketing videos. GEFCS argues that because havePower acknowledges that it continues to derive value from these marketing expenses to this day, these expenses are not properly considered a detriment or injury to havePower. GEFCS also argues that these marketing expenses were not made in reliance on the promise of a concluded deal because they were made by havePower executives either on their own independent initiative or in the face of repeated communications by Robertson indicating that the GE approval process had not been cleared.

In response, havePower identifies all of the injuries it claims to have suffered as a result of GEFCS's repudiation of the alleged promise. havePower first notes that $40,000 in money damages related to its marketing expenses might be considered modest from the point of view of "one of the world's wealthiest corporations," but implies that this amount is not modest for havePower. Regardless of whether this is true, havePower fails to present any evidence or argument in direct response to GEFCS's assertion that the marketing expenses do not count as an injury to have-Power because havePower continues to derive value from the marketing products it acquired from these expenditures.

havePower next observes that it lost the value of the time of its four personnel who focused their efforts on marketing the GE branded fuel cell and that it lost time and momentum that it could have directed toward securing another exclusive arrangement with a different supplier. havePower also observes that it suffered the loss of business with the Washoe Tribe, the prospect of business from the installation of fuel cells at a condominium complex on Rhode Island Avenue in Washington, D.C., and the income from the exclusive sales of fuel cells contemplated by the Distributor Agreement. havePower claims that these are injuries that it suffered by relying on GEFCS's representations. havePower fails to proffer any evidence, however, that shows that the efforts of the havePower personnel and the time and momentum of havePower that could have been directed at other distributorship deals would have yielded anything more or different than what it achieved in its negotiations with GEFCS. The fact that havePower fore-

2. In this court's memorandum opinion issued on January 24, 2002, resolving Defendant's motion to dismiss, the alleged clear and definite promise was identified as Robertson's representations to Zawatsky on August 17, 2000. *havePOWER v. General Electric Co.*, 183 F.Supp.2d 779, 787 (D.Md.2002).

went pursuing other partnerships does not in and of itself establish that it suffered actual detriment. *See Abt Assocs., Inc. v. JHPIEGO Corp.,* 104 F.Supp.2d 523, 536 (D.Md.2000) (finding that plaintiff's contention that its reliance upon defendant's alleged promise to enter into a formal contract forced it to forego joining a competing team did not result in actual detriment to plaintiff where there was no evidence showing that plaintiff would have received the award it was seeking if it had joined the competing team); *see also Kiley v. First Nat'l Bank of Maryland,* 102 Md. App. 317, 338, 649 A.2d 1145, 1155 (1994) (holding that plaintiffs' claim that they could have taken their business elsewhere was not enough to establish detriment from reliance; in order to prevail, plaintiffs needed to show that they lost an opportunity to secure what they were seeking perpetually from another institution). havePower's claim that its lost business with the Washoe Tribe, from the prospective Rhode Island Avenue project, and from all of its future sales constitutes a detriment suffers from a similar deficiency. The evidence presented to the court indicates that commercial residential fuel cells are presently still unavailable, suggesting that havePower would have suffered these losses regardless of whether GEFCS had decided to walk away from the agreement. havePower has failed to proffer any evidence showing that these losses are definite and occurred because havePower relied on GEFCS's promise.

havePower finally argues that, by holding the check for $750,000, GEFCS caused the amount to remain a liability to havePower. Even if this qualified as a detriment to havePower, paragraph 22.4 of the Distributor Agreement provides that havePower was not obligated to make the pay-

ment until GEFCS notified it that it had satisfied the review and approval process. Paper 25, Ex. 4. In fact, in his letter to Robertson which accompanied the copies of the Distributor Agreement that he had executed, Zawatsky offered the check without being required to send it. Paper 25, Ex. 5, at 1 ("Also, we have taken the liberty of enclosing our check for the $750,000 payment called for in Section 6.4 of the Agreement, and request that you hold this check until such time as approval by GEFCS is granted pursuant to Section 22.4"). Furthermore, havePower presumably had the ability to withdraw or stop payment on the check even while GEFCS remained in possession of it. Without any evidence contradicting this presumption, it appears that if the $750,000 check posed a liability to havePower, it was by havePower's choice and not a detriment incurred in reliance on GEFCS's promise of a done deal.

Further, New York law requires that promissory estoppel only be applied where there is "unconscionable injury to the relying party as a result of the reliance." *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir.1996); *see also Zucker v. Katz,* 708 F.Supp. 525 (S.D.N.Y.1989) (citing *D & N Boening, Inc. v. Kirsch Beverages, Inc.,* 99 A.D.2d 522, 471 N.Y.S.2d 299, 301 (2d Dept.), *aff'd,* 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984)). In *Tutak v. Tutak,* 123 A.D.2d 758, 507 N.Y.S.2d 232, 233 (2d Dept.1986), the court held that promissory estoppel would not support a promise allegedly made to a woman by her future father-in-law for support because her reliance upon it, i.e. the subsequent marriage, birth of a child, and abandonment by her husband, did not constitute an unconscionable injury.[3]

---

**3.** Plaintiff argues that GEFCS's conduct was unconscionable. The unconscionability of

Defendant's conduct is not relevant, however, to a claim for promissory estoppel where the

Even assuming that GEFCS made representations to havePower that constitute a clear and definite promise and that reasonable and foreseeable reliance resulted, havePower has failed to proffer evidence to establish that the injuries it claims to have suffered qualify as a detriment, that they result from its reliance on GEFCS's promise, or that they rise to the level of unconscionability required by New York law. The court will therefore grant Defendant's motion for summary judgment on Plaintiff's promissory estoppel claim.

## IV. Conclusion

For the foregoing reasons, because the court will grant Defendant's motion for summary judgment on both the breach of contract and promissory estoppel claims, the claim for specific performance need not be addressed and will be dismissed without prejudice. The parties' cross-motions for summary judgment on that claim will be denied as moot. The court will grant Plaintiff's motion for leave to file sur-reply. Defendant's motion for summary judgment on Plaintiff's breach of contract and promissory estoppel claims will be granted and Plaintiff's motion for summary judgment on those claims will be denied. A separate order will follow.

operative question is whether the injuries suf-    fered by Plaintiff were unconscionable.