## UNITED STATES OLYMPIC COMMITTEE

v.

## OLYMPIC SUPPLY, INC., et al.

### Civil Action No. DKC 2008–0496.

United States District Court,
D. Maryland.

May 26, 2009.

Kevin Francis Arthur, Ezra Gollogly, Kramon and Graham PA, Baltimore, MD,

Blake J. Lawit, Douglas A. Winthrop, Howard Rice Nemerovski Canady Falk and Rabkin PC, San Francisco, CA, for United States Olympic Committee.

Michele L. Edwards, Charles Hildebrandt, The Roberts Law Group PLLC, Washington, DC, for Olympic Supply, Inc.

## MEMORANDUM OPINION

DEBORAH K. CHASANOW, District Judge.

Presently pending and ready for resolution in this trademark infringement action are cross motions for summary judgment filed by Plaintiff United States Olympic Committee ("USOC") and Defendant Olympic Supply, Inc. d/b/a/ Olympic News ("OSI"). (Papers 22, 23). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion for summary judgment will be denied and Plaintiff's motion for summary judgment will be granted in part.

## I. Background

The Ted Stevens Olympic and Amateur Sports Act ("OASA"), 36 U.S.C. § 220501, *et. seq.*, grants the USOC the exclusive right to use the word "Olympic" and certain symbols associated with the Olympic games. The symbols include words and terminology, such as the Five Interlocking Rings (the "Olympic Symbol"), and the words, "Olympic," "Olympiad," "Citius Altius Fortius," as well as any combination thereof (collectively the "Olympic Marks").

The USOC has statutory responsibilities under the OASA for coordinating and developing amateur athletic activity in the United States directly related to international amateur athletic competition. To fulfill these responsibilities, the USOC obtains most of its funding through sponsorship fees, suppliership agreements, and fees obtained through licensing, including licensing use of the word "Olympic" in connection with media properties and merchandise.

The following facts are undisputed. OSI operates a wholesale business selling medical, janitorial, and industrial supplies primarily to government agencies, large corporations, hospitals, and military installations. In addition, OSI operates a retail business with several airport locations and one "destination resort" street location. The retail locations operate under the trade name "Olympic News." OSI uses the word Olympic as part of its retail and wholesale business, and on its "Olympic News" signage, invoices, bags, and advertising materials associated with its retail and wholesale business.

In December 1991, OSI filed its certificate of incorporation with the Secretary of the State of Delaware, and has been in business continuously since that time.[1] At the time of incorporation of OSI, the USOC had not filed a federal trademark registration for the mark "Olympic News." In 1998, USOC filed a federal trademark registration for the mark "U.S. Olympic News Network," but the registration was cancelled on March 16, 2006. In 1995, OSI moved its main offices from the District of

---

1. The registration has not, however, been uninterrupted. OSI's Delaware corporate charter was revoked on March 1, 1997 for nonpayment of taxes. OSI filed a certificate of renewal and revival with the Delaware Secretary of State on August 24, 1999. OSI's corporate charter again became inoperative on March 1, 2004 for failure to file annual reports and non-payment of taxes and remained inoperative until OSI filed a second certificate of renewal and revival on September 23, 2005. On October 3, 2005, OSI filed a certificate with the Maryland State Department of Assessments and Taxation ("SDAT") disclosing that it was the owner of a business operating under the trade name "Olympic News."

Columbia to Maryland. On January 4, 1996, OSI filed a registration of incorporation with the SDAT. On October 3, 2005, OSI filed a certificate with the SDAT disclosing that it was the owner of a business operating under the trade name "Olympic News." In or around August 2006, the USOC gained actual knowledge of OSI and its use of the word Olympic. The USOC never told OSI that it consented to OSI's use of the word Olympic.

The USOC contacted OSI in September 2006 to demand that OSI cease its use of the word Olympic. Thereafter, the USOC and OSI communicated periodically regarding settlement, but failed to reach an agreement. On February 25, 2008, the USOC filed this lawsuit alleging that OSI's use of the word Olympic violates the OASA. The parties agreed to forego discovery and submitted a joint stipulation of undisputed material facts. (Paper 20).

The USOC alleges that the OSI's use violated § 220506(c) of the OASA, which provides:

> [The USOC] may file a civil action against a person for the remedies provided in the [Lanham Act] if the person, without the consent of the corporation, uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition—...
>
> > (3) the word[ ] [Olympic] ... or any combination or simulation of those words tending to cause confusion or mistake, to deceive, or to falsely suggest a connection with [USOC] or any Olympic, Paralympic, or Pan–American Games activity ...

The USOC seeks declaratory and injunctive relief, and monetary damages.

## II. Motions for Summary Judgment

### A. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.2003) (internal quotation marks omitted). *See also havePower, LLC v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md.2003) (citing 10A Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2720 (3d ed.1983)). The court reviews each motion under the familiar standard for summary judgment, supra. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a mat-

ter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

### B. Analysis

OSI asserts that it is entitled to summary judgment for two reasons: first, that the USOC's claims are barred by the doctrine of laches, and second, that the OASA is not applicable to use in its corporate name. Conversely, the USOC argues that it is entitled to summary judgment because OSI's use of the word Olympic to advertise and promote its business violates the OASA. The USOC further argues that it is entitled to summary judgment on OSI's affirmative defense of laches because the USOC did not have actual or constructive knowledge of OSI or its use of the word Olympic until 2006.

### 1. Laches

■■■ Laches is one of the affirmative defenses generally allowable under Fed.R.Civ.P. 8(c), although it is properly relevant only where the claims presented may be characterized as equitable, rather than legal. *See Environmental Defense Fund, Inc. v. Alexander,* 614 F.2d 474, 478 (5th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). Laches imposes on the defendant the ultimate burden of proving "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Needless to say, whether laches bars an action depends upon the particular circumstances of the case. *National Wildlife Federation v. Burford,* 835 F.2d 305, 318 (D.C.Cir. 1987). *White v. Daniel,* 909 F.2d 99, 102 (4th Cir.1990). The doctrine of laches "applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party." *Liddy v. Lamone,* 398 Md. 233, 244, 919 A.2d 1276 (2007) (citing cases). Pursuant to § 220506(c), the USOC may pursue remedies available under the Lanham Act to enforce its rights in the Olympic Marks and the Olympic Symbols. However, the OASA does not "does not incorporate defenses available under the Lanham Act." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 530, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (hereafter *SFAA* ). "The user may, however, raise traditional equitable defenses, such as laches." *Id.* at 532 n. 6, 107 S.Ct. 2971. "Estoppel by laches generally applies in a trademark infringement action to preclude relief for an owner of a mark who has unreasonably slept on his rights." *What–A–Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.,* 357 F.3d 441, 448 (4th Cir.2004). The United States Court of Appeals for the Fourth Circuit has articulated the following three-part test to analyze whether laches bars a plaintiff's claim:

> [A] court's consideration of laches in the trademark context should encompass at least these questions: "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay."

*Id.* at 448–49 (quoting *Brittingham v. Jenkins,* 914 F.2d 447, 456 (4th Cir.1990)). "[T]he key question, for purposes of estoppel by laches, is not simply whether there has been some delay, but whether that delay was *unreasonable.*" *Id.* at 449 (citing *Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 461 (4th Cir.1996)(emphasis in original)).

OSI argues that the USOC had notice of the use of the name "Olympic News" from at least three different dates. First, in 1991 when OSI filed its Certificate of Incorporation with the Secretary of State of Delaware, second in 1996 when OSI filed its registration of incorporation with the SDAT, and third in 2005 when OSI filed a certificate with the SDAT disclosing that OSI was operating under the trade name "Olympic News." OSI argues that because the USOC had constructive notice of the use of the word Olympic for thirteen years but failed to bring an action or make any attempt to enforce any alleged rights, its claim is now barred under the doctrine of laches.

The USOC asserts that its claim is not barred by laches for three reasons: (1) case law uniformly holds that corporate registrations do not provide constructive knowledge of trademark use, and the USOC had no actual knowledge of OSI or its use of the word Olympic prior to 2006, (2) even if it should have been aware of OSI's corporate filings, the USOC did not unreasonably delay in filing suit because OSI's corporate charter was revoked on a number of occasions, and the USOC sued OSI within a reasonable time after OSI's charter was restored, and (3) laches cannot prevent the USOC from obtaining injunctive relief based on OSI's violation of the OASA.

■ As an equitable defense, the standard necessarily remains fact intensive. A "reasonably prudent person" standard applies, and the test is generally whether Plaintiff, without actual knowledge, is nevertheless "chargeable with such knowledge as [it] might have obtained upon inquiry, provided the facts already known by [it] were such as to put upon a [person] of ordinary intelligence the duty of inquiry." *Johnston v. Standard Mining Co.,* 148 U.S. 360, 370, 13 S.Ct. 585, 37 L.Ed. 480 (1893), cited in 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 31:38 (4th Ed. 2009).

The USOC maintains and the parties have agreed that it was completely unaware of OSI and its use of the word Olympic until August 2006. The USOC insists that immediately after it had actual knowledge of OSI, the USOC demanded that OSI stop using the word Olympic. The USOC, citing *What–A–Burger of Va.,* insists that delay is not measured from the time that OSI was incorporated, but rather from the time the USOC knew or should have known of the infringement. The USOC asserts that under the rule set forth in *Omega Eng'g, Inc. v. Omega Shielding Prods., Inc.,* 1998 WL 35256542 (D.Conn. Mar. 3, 1998), the fact that a company filed a corporate registration does not give constructive notice of infringing use.

In *Omega Eng'g,* Omega Engineering sought injunctive relief and damages against Omega Shielding alleging trademark infringement and unfair competition. Omega Shielding moved for summary judgment on the sole basis of laches, arguing that Omega Engineering had constructive knowledge of use of the disputed trademark upon Omega Shielding's incorporation. The court rejected Omega Shielding's argument and denied the motion for summary judgment, holding that constructive knowledge could not be inferred from, *inter alia,* listing in an engineering registry, advertisements in publications, or incorporation. The court noted that "a plaintiff is not chargeable with constructive notice if it might be inferred that plaintiff's ignorance was genuine and reasonable under the circumstances." *Id.* at *2.

Additionally, in *Standard Oil Co. of Colo. v. Standard Oil Co.,* 72 F.2d 524, 527 (10th Cir.1934), plaintiff Standard Oil Company brought a trademark infringe-

ment action against defendant Standard Oil Company of Colorado. The defendant raised a laches defense, arguing that the plaintiff should be deemed to have knowledge of the defendant's existence based on defendant filing articles of incorporation with the state of Colorado under the name "Standard Oil of Colorado, Inc." The court rejected the defendant's argument holding that "[l]aches cannot be imputed to one who has been justifiably ignorant of the facts creating his cause of action." The court found that the "[t]he incorporation and organization of defendant was without the knowledge, consent, or approval of plaintiff." Accordingly, the plaintiff's claim was not barred by laches because "the plaintiff acted with reasonable promptness after it acquired knowledge of the facts creating its cause of action."

In order for Plaintiff to be chargeable with constructive knowledge merely from the corporate registration, Defendant has to prove that a reasonable organization would routinely check every state's corporate registrations on a regular basis to search for improper use of its marks. There are no facts stated that would give rise to such an onerous burden. Although the USOC has "a duty to protect and preserve [its] trademark assets through vigilant policing and appropriate acts of enforcement," McCarthy § 11:91, mere corporate registration, without open and obvious use of the name, would hardly justify the level of vigilance suggested by Defendant's assertion of this defense. In addition to the cases discussed above, other courts have found analogous circumstances not to provide constructive knowledge: listing in a telephone directory, *Nat'l Trailways Bus Sys. v. Trailway Van Lines, Inc.*, 269 F.Supp. 352 (E.D.N.Y. 1965), or appearing in the federal trademark Supplemental Register, *Plus Prods. v. Med. Modalities Assocs., Inc.*, 211

U.S.P.Q. 1199, 1205–06 (T.T.A.B.1981); *Loma Linda Food Co. v. Thomson & Taylor Spice Co.*, 47 C.C.P.A. 1071, 279 F.2d 522, 525 (1960).

In light of the foregoing, Defendant is not entitled to summary judgment, having failed to demonstrate that the undisputed facts establish the defense of laches, on which it has the burden of persuasion. On the other hand, Plaintiff is entitled to summary judgment on the laches defense. On the facts agreed to, there is no basis for attributing constructive knowledge to Plaintiff based on the corporate registrations alone, and Plaintiff acted promptly upon obtaining actual knowledge of Defendant's use of the word "Olympic."

## 2. Applicability of the OASA

36 U.S.C. § 220506(c) provides for a civil action for unauthorized use as follows:

> Except as provided in subsection (d) of this section, the corporation may file a civil action against a person for the remedies provided in the Act of July 5, 1946 (15 U.S.C. 1051 *et seq.*) (popularly known as the Trademark Act of 1946) if the person, without the consent of the corporation, uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition-[the word Olympic]

OSI contends that the OASA does not apply to the use of the word Olympic as part of its corporate name, Olympic Supply, Inc., and that, based on the holding in *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (hereafter *SFAA* ), the OASA applies only to commercial speech. OSI argues that commercial speech has been narrowly defined as speech that does no more than to propose a commercial transaction. OSI insists that its use of the name Olympic Supply, Inc. is

not an advertisement because it makes no reference to a specific product, does not propose any commercial transaction, and is not motivated by economic interest, but rather identifies a corporate entity.

The USOC responds that under the plain text of the OASA, the relevant question is whether OSI's uses of Olympic as a corporate name and a trade name are "for the purposes of trade" or to induce the sale of OSI's goods and services as set forth in § 220506(c), not whether the use of the corporate name "Olympic News" is commercial speech. The USOC contends that OSI's use of Olympic in its registered corporate name is not speech or expressive conduct at all and, as a result, the commercial speech doctrine does not apply.

In *SFAA*, the USOC and the International Olympic Committee brought an action under the OASA against the SFAA, an organization sponsoring the "Gay Olympic Games." In connection with promoting the event, the SFAA used the words "Gay Olympic Games" on its letterhead, mailings, t-shirts, buttons, bumper stickers, and in local newspapers. The Gay Olympic Games was also scheduled to include an opening ceremony similar to the Olympic games, and the winning athletes would receive gold, silver, and bronze medals.

As characterized by the Court, the OASA grants the USOC "the right to prohibit certain commercial and promotional uses of the word "Olympic" and various Olympic symbols." *SFAA*, 483 U.S. at 526, 107 S.Ct. 2971. In addressing the First Amendment argument that Congress could not grant exclusive use without a requirement that the authorized used prove likelihood of confusion, the Court noted that "to the extent that [the OASA] applies to uses 'for the purpose of trade [or] to induce the sale of any goods or services,' 36 U.S.C. [§ 220506(c) ], its application is to commercial speech." *SFAA*,

483 U.S. at 535, 107 S.Ct. 2971. Commercial speech, of course, receives more limited protection under the First Amendment. The Court found that SFAA's use was undoubtedly commercial speech. SFAA's use of the word Olympic sought to advertise the Gay Olympic Games, to induce the sale of goods carrying the logo "Gay Olympic Games," and "exploit[ed] the commercial magnetism of the word given value by the USOC." *Id.* at 539, 107 S.Ct. 2971 (internal quotation and citation omitted). The Court emphasized that "[t]here is no question that this unauthorized use would undercut the USOC's efforts to use, and sell the right to use, the word in the future, since much of the word's value comes from its limited use. Such an adverse effect on the USOC's activities is directly contrary to Congress' interest." *Id.*

■ Thus, the USOC does not have to prove likelihood of confusion in order to prevent use of the word "Olympic" in commercial activities. The act "primarily applies to all uses of the word "Olympic" to induce the sale of goods or services." *SFAA*, 483 U.S. at 539, 107 S.Ct. 2971. Undoubtedly, some of OSI's uses of the word Olympic involve commercial speech. The statement of facts recites that "OSI's [sic] uses the word 'Olympic' as part of its retail and wholesale business, on its 'Olympic News' signage, on invoices, letterhead, on bags, and on advertising materials associated with its retail and wholesale business." (Paper 25, ¶ 8).

■ OSI also uses the word "Olympic" as part of its corporate registration. If OSI were to restrict the use of its corporate name to mere registration documents, and not include it in telephone directories, on letterhead, signs, or in any other way to induce the sale of goods or services, the USOC might not be able to complain. But, at present, the use goes beyond

"mere" corporate registration. The agreed facts state that "OSI has operated and continues to operate a wholesale business selling medical, janitorial and industrial supplies" and that it uses the word Olympic in connection with retail and wholesale activities. It is unclear whether OSI operates the wholesale business using its full corporate name Olympic Supply, Inc., or whether it operates the wholesale business, in addition to the retail business, under the name Olympic News, or whether it uses the word Olympic in some other way. The USOC is entitled to prevent any use of the word in connection with any wholesale or retail business.

### 3. Violation of § 220506(c)

■ As noted above, § 220506(c) provides that the USOC has exclusive rights to use the word Olympic and may bring a civil action against a party engaged in unauthorized use for the purpose of trade or to induce the sale of goods. It is undisputed that the USOC received in 1973 and currently holds a federal registered trademark in the word Olympic. (Paper 25, at ¶ 9). It is also undisputed that OSI uses the name "Olympic News" as part of its retail business and the USOC never consented to OSI's use of the word Olympic. (*Id.* at ¶ 7). Thus, OSI's use of the trade name "Olympic News" is unauthorized and in violation of § 220506(c). Further, OSI agrees that it uses the word Olympic in connection with its wholesale business. Accordingly, summary judgment will be granted in favor of the USOC with respect to the complaint for OSI's use of the name "Olympic News" and any other use of the word Olympic in connection with trade or the sale of goods.

### III. Requested Relief

The USOC requests immediate relief in the form of an injunction ordering that OSI cease use of its business name "Olym-pic News" and corporate name "Olympic Supply, Inc.," turn over to the USOC for destruction all infringing materials, publish a notice disclaiming any connection with the USOC, and file a report detailing the manner and form in which it has complied with the injunction.

OSI does not fully respond to the relief requested, but rather simply argues that laches bars injunctive relief. OSI does not address the merits of the USOC's request for injunctive relief in the event that the court finds, as it did, that laches does not apply. Although it appears that the USOC might be entitled some to injunctive relief, the precise scope of that relief is not entirely clear. A telephone conference will be held to determine further proceedings to resolve the remaining issues in this case.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be denied, and Plaintiff's will be granted in part. A separate order will follow.