**Paul KRESS**

v.

**FOOD EMPLOYERS LABOR RELATIONS ASSOCIATION and United Food and Commercial Workers Health and Welfare Fund, et al.**

**No. CIV.A. DKC 2002–2159.**

United States District Court, D. Maryland.

Sept. 24, 2003.

Louis Fireison, Louis Fireison and Associates PA, Bethesda, MD, Michael A. Coogen, Jr., Margolius Mallios and Rider LLP, Largo, MD, for Plaintiff.

Harry W. Burton, Jennifer M. Simmons, Terra Elswick Castaldi, Morgan Lewis and Bockius LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, are: (1) a motion for summary judgment by Plaintiff Paul Kress; (2) a motion for summary judgment by Defendant Food Employers Labor Relations Association and United Food and Commercial Workers Health and Welfare Fund (the Fund); and (3) a motion by the Fund to withdraw admissions. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule

105.6. For the reasons that follow, the court will grant the Fund's motion for summary judgment, deny Plaintiff's motion for summary judgment, and grant the Fund's motion to withdraw admissions.

## I. Background

### A. Factual Background

Unless otherwise stated, the following facts are uncontroverted. Plaintiff was employed by Giant of Maryland, LLC (Giant) at store no. 67 located in Silver Spring, Maryland.[1] At the time Plaintiff was considering joining Giant as an employee, Giant promised to provide benefits to Plaintiff in the event he should ever be injured as a result of an accident. This promise was a condition of Plaintiff's decision to accept employment with Giant. After joining Giant, the terms of Plaintiff's health and welfare benefits plan took effect, and Plaintiff and his dependents became covered by the Fund. The Fund is a "welfare benefit plan" governed by ERISA.

Plaintiff later became involved in an automobile accident with a third party, on November 14, 2000, in which he sustained serious injuries that required him to seek medical treatment.[2] In April 2001, the Fund sent Plaintiff a Subrogation Assignment of Rights and Reimbursement Agreement (Subrogation Agreement) for his signature. Plaintiff signed the Subrogation Agreement, but his attorney objected to its provisions requiring his signature and the Fund to be reimbursed before any other entity.[3] Thereafter, the two sides remained at an impasse. In October 2001, the Fund informed Plaintiff that it would

---

1. Giant was initially a co-defendant in this action. The court granted Giant's motion to dismiss. *Kress v. Food Employers Labor Relations Ass'n*, 217 F.Supp.2d 682 (D.Md.2002).

2. Plaintiff last actively worked for Giant a few days before the accident. *See* Paper 33, Ex. 8.

3. This issue will be discussed in greater detail, *infra.*

discontinue payment of his accident-related medical expenses. The Fund also ceased coverage of Plaintiff's other medical expenses and the general medical expenses of his dependents.

### B. Procedural Background

In May 2002, Plaintiff filed a complaint against the Fund in Circuit Court for Montgomery County, Maryland, under 29 U.S.C. § 1132(a)(1)(B). Because the action was brought under ERISA, as well as under the laws of Maryland, the case was removed to this court pursuant to 28 U.S.C. § 1441, on June 27, 2002. In his complaint, Plaintiff seeks: (1) a declaratory judgment; (2) recovery of plan benefits; and (3) damages for breach of fiduciary duty by the Fund. Plaintiff filed a motion for summary judgment pursuant to Fed. R.Civ.P. 56(a) on November 27, 2002. The Fund moved for summary judgment pursuant to Fed.R.Civ.P. 56(b) on March 19, 2003. The Fund also filed a motion to withdraw admissions on July 2, 2003.

### II. Motion to Withdraw Admissions

Plaintiff served his requests for admission upon the Fund on January 30, 2003. The Fund did not substantively respond to Plaintiff's requests within 30 days and thus the matters of which admission had been requested were automatically deemed admitted, pursuant to Fed. R.Civ.P. 36(a). *See* Paper 42. On July 2, 2003, the Fund moved to withdraw admissions and file responses pursuant to Fed. R.Civ.P. 36(b).

Under Rule 36(b), the court may allow withdrawal of admissions "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal ... will prejudice him in maintaining his action or defense on the merits." Fed.R.Civ.P. 36(b). *See also* 8A Charles A. Wright & Arthur R. Miller,

Federal Practice and Procedure § 2257 (2d ed.1994) ("the admission that would otherwise result from a failure to make timely answer should be avoided when to do so will aid in the presentation of the merits of the action and will not prejudice the party who made the request"). The court has "considerable discretion over the withdrawal of admissions once they have been made." *U.S. v. Turk,* 139 F.R.D. 615, 618 (D.Md.1991).

It is clear from the discussion, *infra,* that refusal to allow the Fund to withdraw admissions would unduly hamper the Fund's ability to present its case on the merits. Moreover, Plaintiff has failed to show that he relied on the Fund's admissions at all, so that permitting the Fund to withdraw admissions would prejudice him in maintaining his action. *See* 8A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2264 (2d ed.1994) ("prejudice" in Fed.R.Civ.P. 36(b) refers "to the prejudice stemming from reliance on the binding effect of the admission"). Therefore, the court will grant the Fund's motion to withdraw admissions.

### III. Cross Motions for Summary Judgment

### A. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.

*Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.,* 108 F.3d 529, 536 (4th Cir.), *cert. denied, Gold v. Panalpina, Inc.,* 522 U.S. 810, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely col-

orable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.2003) (internal quotation omitted). *See also Havepower, LLC v. Gen. Electric Co.,* 256 F.Supp.2d 402, 406 (D.Md.2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 2720 (3d ed.1983)). The court reviews each motion under the familiar standard for summary judgment, *supra.* The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

### B. Defendant's Motion for Summary Judgment

#### 1. The Fund's Denial of Plaintiff's Benefits

The Fund is governed by a summary plan description (SPD), which also serves as the Fund's plan document (Plan). *See* Paper 33, Ex. 2. Plaintiff and his dependents were eligible for and received benefits while Plaintiff was "employed" by Giant, a participating employer in the Fund's Plan, "during periods of *active work.*" Paper 33, Ex. 2 at 15, 18 (emphasis in original). On November 14, 2000, Plaintiff was involved in a car accident with a third party that left him severely injured and unable to work.

The Plan does not provide accident and sickness benefits to an employee, such as Plaintiff here, whose injuries were caused

by a third party.[4] *See* Paper 33, Ex. 2 at 33, 55. However, the Plan offers a subrogation option for employees injured by third parties, which provides in pertinent part:

> **[Y]ou are required to reimburse the Fund in full** from **any** recovery you or your eligible dependent may receive, no matter how it is characterized.... The Fund requires that you and/or your eligible dependent (if applicable) and your or your dependent's attorney fill out, sign, and return to the *Fund office* a subrogation agreement that includes a questionnaire about the accident. Your claim will not be deemed complete and will be pended for payment until your fully executed subrogation agreement is received by the Fund office. If it is not completed in a timely fashion [within 180 days after the accident], your claim will be denied.

Paper 33, Ex. 2 at 33 (emphasis in original). Furthermore, the Subrogation Agreement requires that the Fund receive first priority for reimbursement, "before all others." Paper 33, Ex. 5.[5] Plaintiff opted for subrogation and signed the Agreement on April 6, 2001. The Fund paid Plaintiff $1514.08 for accident and sickness benefits, in anticipation that Plaintiff properly would complete and submit the Subrogation Agreement. *See* Paper 33, Ex. 1. Plaintiff's attorney, however, refused to sign the Subrogation Agreement, as required by the Plan, objecting to the Fund's right of first reimbursement ahead of attorney's fees. *See* Paper 33, Ex. 6. As a result, the Fund discontinued payment of benefits to Plaintiff and his dependents because Plaintiff was no longer entitled to benefits from the Plan, since he was not actively working or otherwise eligible for benefits—that is, he was no longer "employed" under the Plan.

■■■■ A court must grant deference to the decision of a plan administrator where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The proper standard of review of the administrative decision is for abuse of discretion and the decision will not be disturbed "if it is reasonable." *Booth v. Wal–Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342 (4th Cir.2000). Courts recognize, however, that financial considerations may create a type of conflict of interest. In such situations, the deference is "lessened to the degree necessary to neutralize any untoward influence" arising from the administrator's financial interest. *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied, Blue Cross & Blue Shield of Va. v. Bailey*, 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996) (quoting *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80, 87 (4th Cir.1993)).

■■■■ Determination of whether to award benefits under an ERISA plan is made "in the first instance by the language of the

---

4. The Plan enumerated other eligibility requirements for being "employed," aside from "active work," but Plaintiff did not qualify for any of them. *See* Paper 33, Ex. 2 at 15.

5. This paragraph of the Subrogation Agreement provides in full:

> I agree to immediately reimburse the Fund, before all others, for all benefits paid on my behalf by the Fund in connection with the accident described below from any recovery, no matter how characterized or whether by suit, judgment, settlement, compromise or otherwise, I receive with regard to the accident described below. If less than the full amount paid by the Fund is received from a third party, the Fund shall be paid the amount so received.

Paper 33, Ex. 5.

plan itself." *Steamship Trade Ass'n Intern. Longshoremen's Ass'n., Benefits Trust Fund v. Boehmer*, 247 F.3d 181, 183 (4th Cir.2001) (quoting *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir.1993)). An ERISA fiduciary must discharge its duties with respect to a plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

▇ The Fund argues that it was simply adhering to the clear and unambiguous language of the Plan, in denying benefits to Plaintiff and his dependents, and that it was well within its discretionary authority to do so. The court agrees.

Together, the Plan and Subrogation Agreement constitute the governing documents and instruments under § 1104(a)(1)(D). Even though the Plan does not include the Agreement, the Plan expressly discusses the need for Plaintiff to reimburse the Fund "in full" from any recovery and to submit "a fully executed subrogation agreement." Paper 33, Ex. 2 at 33.[6] Plaintiff "cannot escape the unambiguous language" of the two documents, which require: (1) the signature of Plaintiff's attorney on the subrogation agreement in order to be eligible for accident benefits, and (2) reimbursement of the Fund first, before any other entity. *United McGill Corp. v. Stinnett*, 154 F.3d 168, 173 (4th Cir.1998) (unambiguous language of plan "obligates [beneficiary] to repay the benefits paid in full without mention of a pro rata deduction for her expenses"). The right of first reimbursement provision is proper where, as in this case, the language of the plan is "clear and unequivocal" and the provision is "not inconsistent with the other language of the plan." *In re Paris*, 44 F.Supp.2d 747, 749 (D.Md.1999) (giving deference to subrogation agreement, which provided that "[b]y accepting benefits from the Fund, the insured person agrees that any amounts recovered by the insured person by judgment, settlement or otherwise *will be first applied to reimburse the fund* " (emphasis in original)), *aff'd* 211 F.3d 1265 (4th Cir.) (unpublished table decision), *cert. denied, Paris v. Iron Workers Trust Fund, Local No. 5*, 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 125 (2000).

Although the signature of the beneficiary's attorney on the Subrogation Agreement appears to be a novel requirement, there is no reason why the Fund should not have the discretion to require the signature of both the beneficiary and his agent, his attorney. In refusing to sign the Subrogation Agreement, the attorney specifically stated Plaintiff's position that the Fund should be obligated to share in the attorney's fees, a position directly contrary to the terms of the Plan. Granting deference to the Fund's exercise of discretion accords with the principle articulated recently, that "employers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 1971, 155 L.Ed.2d 1034 (2003).

---

**6.** Plaintiff argues that the right of first reimbursement provision in the Subrogation Agreement is invalid because it was not included in the SPD (i.e., the Plan), thereby creating a "discrepancy" between the two documents. The SPD itself must contain, *inter alia,* "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Moreover, there are no "additional disclosure obligations beyond the disclosure obligations imposed by ERISA." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 658 (4th Cir.1996), *cert. denied,* 519 U.S. 1077, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997). The Fund's SPD satisfies § 1022(b), as the right of first reimbursement provision in the Subrogation Agreement merely supplements the SPD, rather than creating any sort of discrepancy.

In denying benefits to Plaintiff, the Fund acted entirely within its discretion, based on a reasonable interpretation of the express language of the Plan documents. Therefore, the court will grant summary judgment for the Fund. *See Steamship Trade Ass'n.*, 247 F.3d at 183; *Lockhart*, 5 F.3d at 79.

### 2. Alleged Breach of Fiduciary Duty by the Fund

 Plaintiff alleges in his complaint that the Fund committed a breach of fiduciary duty by denying him benefits. A claim for breach of fiduciary duty will not lie "where the resolution of the claim rests upon an interpretation and application of an *ERISA-regulated plan* rather than upon an interpretation and application of *ERISA.*" *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir.1999) (emphasis in original), *cert. denied, Sydnor v. Smith*, 528 U.S. 1116, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000). Indeed, in the former situation, such a claim is actually one for benefits. *See id.* Moreover, an ERISA fiduciary does not breach its fiduciary duty merely by denying a beneficiary's claims pursuant to a Plan because "adherence to an ERISA controlled plan is not a breach of fiduciary duty." *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 225 (4th Cir. 1998) (citing *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1080 (4th Cir.), *cert. denied,* 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989)).

 Plaintiff bases his breach of fiduciary duty claim squarely on the Fund's decision to deny him benefits. *See* Paper 12.[7] As a result, he has failed to make out a legally cognizable claim for breach of fiduciary duty. *Cf. Sydnor*, 184 F.3d at 363 (plaintiff stated claim for breach of fiduciary duty where allegations were "independent of a claim for benefits" and did not challenge denial of benefits). In addition, as discussed, *supra*, the Fund simply adhered to its Plan in denying benefits to Plaintiff after Plaintiff's attorney refused to sign the subrogation agreement because Plaintiff was no longer eligible otherwise for receipt of Plan benefits. Thus, the court will grant the Fund's motion for summary judgment on Plaintiff's breach of fiduciary duty claim.[8]

### C. Plaintiff's Motion for Summary Judgment

Based on the foregoing discussion granting the Fund's motion for summary judgment, it follows that Plaintiff's motion for summary judgment must be denied. Plaintiff has not shown that he is entitled to judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to withdraw admissions will be granted; Defendant's motion for summary judgment will be granted; and Plaintiff's motion for summary judgment will be denied.

---

7. In his complaint, for instance, Plaintiff alleges: "[T]he Fund failed to make and authorize a benefits payment to Plaintiff at a time when they knew or should have known that Plaintiff was entitled to said benefit payment under the terms of the Plan." Paper 12.

8. The Fund argues, in the alternative, that summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies under the Plan. Since the court already has granted the Fund's motion for summary judgment on Plaintiff's claims regarding the Fund's denial of benefits and the alleged breach of fiduciary duty, the court need not address the failure to exhaust argument.